IN THE COURT OF APPEALS OF TENNESSEE
AT NASHVILLE

FILED

October 30, 1998

Cecil W. Crowson
Appellate Court
Clerk

THOMAS CALVIN MANEY,          )
                              )
        Petitioner/Appellant, )
                              )  Appeal No.
                              )  01-A-01-9710-CV-00562
VS.                           )
                              )  Davidson Chancery
                              )  No. 96C-3572
TENNESSEE BOARD OF PAROLES,   )
                              )
                              )
        Respondent/Appellee.  )


APPEALED FROM THE CHANCERY COURT OF DAVIDSON COUNTY
AT NASHVILLE, TENNESSEE

THE HONORABLE THOMAS W. BROTHERS, JUDGE


THOMAS C. MANEY, #216056
Southeastern Tennessee State
  Regional Correctional Facility
Route 4, Box 600
Pikeville, Tennessee 37367
        Pro Se/Petitioner/Appellant

JOHN KNOX WALKUP
Attorney General & Reporter

JOHN R. MILES
Counsel for the State
Cordell Hull Building, Second Floor
425 5th Avenue North
Nashville, Tennessee 37243-0488
        Attorney for Respondent/Appellee


AFFIRMED AND REMANDED

BEN H. CANTRELL,
PRESIDING JUDGE, M.S.

CONCUR:
KOCH, J.
CAIN, J.

## OPINION

A prisoner at the Lake County Regional Correctional Facility filed a Petition for Writ of Certiorari in the Circuit Court of Davidson County, claiming that the Board of Paroles had acted illegally in revoking his parole, and in refusing to reconsider the revocation. The circuit court granted summary judgment to the Board of Paroles. We affirm.

## I. Parole Revocation Proceedings

Thomas Calvin Maney was convicted of cocaine possession on February 13, 1993, and received an eight year sentence. He was released on parole on August 30, 1995. At the time of his release, he signed a Certificate of Parole, which set out ten general rules or conditions of parole and three special conditions that he was obligated to comply with.

On March 6, 1996, Donna Maples, Mr. Maney's live-in girlfriend, swore out a criminal warrant against him, alleging that he had assaulted her on February 13, February 22, and February 29, and that she had to go to the emergency room for treatment following the assault of February 13. Ms. Maples also moved out of Mr. Maney's home on March 6, and moved in with an aunt. Upon learning of the warrant, Mr. Maney's parole officer, Ms. J. Gale Reed, contacted Mr. Maney and told him to have no further contact with Ms. Maples or her family, either directly or indirectly.

The parole officer also telephoned Ms. Maples, and told her to document any attempts by Mr. Maney to contact her. The next day, Ms. Maples told Ms. Reed that a female friend of hers had telephoned, and told her that Mr. Maney was very sorry for what he had done, that he would pay her hospital bills, that he wanted to get back together with her, and that he wanted her to drop the charges. Ms. Maples said that she could hear Mr. Maney's voice in the background, telling the friend what to say. Ms. Reed was able to confirm this account by making a call to the friend.

On March 7, Mr. Maney himself allegedly made two calls to Ms. Maples, and she hung up on him. On the morning of March 11, Mr. Maney called Ms. Maples and asked her to drop the charges against him. On March 18, Ms. Maples telephoned Ms. Reed, and told

the parole officer that she wanted to drop the charges against Mr. Maney. She told Ms. Reed that Mr. Maney's family had agreed to help her with her bills, that she would be able to move back into Mr. Maney's home, and that Mr. Maney had agreed to go to counseling for his problems.

The parole officer generated a parole violation report on March 7, citing Mr. Maney for three violations of Rule 2 ("I will obey the law"), one violation of Rule 7 ("I will abide by all special conditions of parole and carry out all instructions of my parole officer") and one violation of Rule 9 ("I will pay all applicable fees, unless otherwise exempted.") She also contacted Mr. Maney, and instructed him to report to the Bradley County Jail the following day, to have the parole violation warrant served. He failed to do so, and the parole officer added another violation of Rule 7 as a possible reason for parole revocation.

Mr. Maney was given a notice of the charges against him and an explanation of his rights on March 15. On that date, he agreed to waive a preliminary parole revocation hearing, and requested that the final revocation hearing be held as soon as possible. The hearing took place on April 11, 1996. At that time, assault charges were still pending against him in Bradley County.

At the hearing, the hearing officer explained Mr. Maney's rights to him, and he was represented by an attorney, who was permitted to cross-examine the witnesses. As a preliminary matter, the Rule 9 violation was dismissed. After three and a half hours of testimony, including testimony by Ms. Reed, Ms. Maples, Mr. Maney and Mr. Maney's father, the hearing officer sustained one count of the Rule 2 violation, and both counts of the Rule 7 violation, and recommended to the Board that Mr. Maney's parole be revoked. On May 15, 1996, the Board voted to adopt the hearing officer's recommendation.

On June 26, 1996, Mr. Maney filed an administrative appeal with the Board, asking for a new hearing on his parole revocation, on the basis of what he called "significant new evidence." The purported new evidence was that Ms. Maples had recanted her earlier statements, and the assault charges against Mr. Maney had been dismissed on June 7. The Board denied Mr. Maney's administrative appeal.

Mr. Maney then filed a Petition for Common Law Writ of Certiorari in the Circuit Court of Davidson County. He argued that the Board acted illegally by revoking his parole on the basis of a pending criminal charge, and that he was constitutionally entitled to another revocation hearing upon the dismissal of that charge. The trial court

did not agree, and granted summary judgment to the Board of Paroles. This appeal followed.

## II. Due Process

The appellant contends that simply being arrested and charged with an offense is not ispo facto a violation of his parole. *State v. Carter*, No. 03C01-9506-CR-00159 (filed Knoxville, April 16, 1996). We agree. But we must also point out, however, that a conviction for a criminal offense is not necessarily a prerequisite for a parole revocation based upon failure to obey the law. One reason for this is the difference between the standard of proof required to secure a conviction, and that required to revoke a parole.

We must also point out that a Petition for a Common Law Writ of Certiorari affords the petitioner a very limited scope of review. The reviewing court does not examine the intrinsic correctness of the decision of the "inferior court" (in this case the Board of Paroles). It is authorized to order the inferior court to send up the record for review only if the reviewing court determines that the inferior court exceeded its jurisdiction or acted illegally, fraudulently or arbitrarily. *Powell v. Parole Eligibility Review Board*, 879 S.W.2d 871 (Tenn. App. 1994); *Yokley v. State*, 632 S.W.2d 123 (Tenn. App. 1981).

Illegality in the context of a Petition for Writ of Certiorari usually involves allegations of failure to conform to the requirements of due process. Our Supreme Court has stated that the full of panoply rights due a criminal defendant who has not yet been convicted of any crime do not apply in parole revocation proceedings. *State v. Wade*, 863 S.W.2d 406 (Tenn. 1993). But a parolee is entitled to a measure of due process, because the proceedings put his conditional liberty at risk.

Relying upon an opinion of the United States Supreme Court, *Gagnon v. Scarpelli*, 411 U.S. 778 (1973), the *Wade* Court has set out the minimum due process requirements for final parole revocation hearings as follows:

> "(a) written notice of the claimed violations of [probation or] parole; (b) disclosure to the [probationer or] parolee of evidence against him; (c) opportunity to be heard in person and to present witnesses and documentary evidence; (d) the right to confront and cross-examine adverse witnesses (unless the hearing officer specifically finds good cause for not allowing confrontation); (e) a 'neutral and detached' hearing body such as a traditional parole board, members of which need not be judicial officers or lawyers; and (f) a written statement by the fact finders as to the evidence relied on and reasons for revoking [probation or] parole."

863 S.W.2d at 408.

Examining the record of this case, we find that the parole revocation proceedings against Calvin Maney met all the due process requirements listed above. We further find that the hearing officer conducted the hearing with a scrupulous regard for Mr. Maney's due process rights.

Rule 1100-1-1-.13(9)(I) of the Administrative Rules & Regulations of the State of Tennessee, provides that "[a]ll parole revocation hearings shall be conducted in a manner as informal as is consistent with due process, and the technical rules of evidence shall not apply to such hearings." It is instructive to note how the hearing in the present case played itself out in light of this informality.

The chief witness against Mr. Maney was Ms. Reed, who testified as to both sides of her conversations with Mr. Maney, Ms. Maples and others. She also noted Mr. Maney's prior history of assaultive behavior. Mr. Maney's attorney objected to much of this testimony on the ground of hearsay. But even the attorney acknowledged that hearsay is not prohibited in a parole revocation hearing. We note that the effect of this relaxation in the normal rules of procedure, which made it easier for the State to present its case, was balanced by the effect of another deviation from normal courtroom procedure, which benefited the parolee.

Mr. Maney's attorney was permitted to lead his own witnesses on direct questioning, a procedure that would have elicited strenuous objection if attempted at a formal trial. His chief witness was Ms. Maples, who attempted to recant her earlier story. Ms. Maples did not contradict Ms. Reed's testimony as to the content of her conversations with the parole office and others, but she stated that she had made up the story of Mr. Maney's assaults on her out of anger at him, because he wanted to end their relationship.

She explained her injuries as resulting from an altercation with another woman at work. She also claimed that she herself had initiated the phone calls with Mr. Maney that she reported to Ms. Reed. Mr. Maney's attorney was able to lead her through this new version of events step-by-step, requiring her assent alone to establish large portions of her testimony.

The attorney also led Mr. Maney to establish that during the course of his parole, Mr. Maney faithfully reported to his parole officer, worked regularly at his construction job, and was in the process of purchasing his own home. Mr. Maney also denied that he had ever hit or injured Ms. Maples.

We note that the standard of proof for violation of parole is the preponderance of the evidence, not guilt beyond a reasonable

doubt. See Admin. Rules & Regs 1100-1-1-.13(9)(f). Thus the hearing officer and the Board were entitled to weigh the contradictory versions of the truth that were presented to them, and to choose which they considered the most believable, which they did. They were not obligated to give Mr. Maney the benefit of a presumption of innocence.

### III. A Rational Basis

As a general proposition, the decision of an administrative board is considered to be arbitrary if it lacks a rational basis. *Mobilcomm of Tennessee v. Tennessee Public Service Commission*, 876 S.W.2d 101, 104 (Tenn. App. 1993). We should not have to search the record of a parole revocation proceeding in order to determine upon what basis parole was revoked, for this information should be contained in the factfinder's written statement. See section (f) of the excerpt from *State v. Wade* quoted above.

In the present case, it might have been sufficient for the fact finder to summarize the evidence upon which his findings were based, and to state that the testimony of Ms. Reed was more worthy of belief than that of Ms. Maples, in order to preclude the trial court from granting the Petition for a Writ of Certiorari on the basis of arbitrariness. But the hearing officer went beyond that, and stated

his reasons for believing Ms. Maples' first account of the origin of her injuries rather than her later recantation.

These included Ms. Maples' economic dependence upon Mr. Maney and his family, the consistency between her statements to the parole officer, and those she made to law enforcement and medical personnel in the hospital, and the closeness in time between those statements and the time of the incidents in question. The hearing officer also noted that Mr. Maney had admitted during the hearing that he had grabbed Ms. Maples' shoulders to calm her down, and that he admitted to at least indirect contact with Ms. Maples after he was warned to avoid all contact with her (though he did state, as did Ms. Maples, that she was the one who initiated the contact). Considering the reasoning of the hearing officer, we cannot conclude that the initial decision of the Board was arbitrary or that it lacked a rational basis.

It also follows that there was a rational basis for the Board's refusal to convene another hearing after the assault charges against Mr. Maney were dismissed. Contrary to Mr. Maney's assertions, the Board's refusal was not precluded by "significant new evidence." Ms. Maples made it abundantly clear at the revocation hearing that she did not intend to press charges or testify against Mr. Maney. Under that circumstance, and considering the heightened

burden of proof required for a criminal conviction, it is not at all surprising that the Bradley County Court dismissed the charges. Ms. Maples' decision to change her story may have saved Mr. Maney from another conviction and an additional jail term, but it was not sufficient to prevent his parole from being revoked.

## IV.

The judgment of the trial court is affirmed. Remand this cause to the Circuit Court of Davidson County for further proceedings consistent with this opinion. Tax the costs on appeal to the appellant.

_____
BEN H. CANTRELL, PRESIDING JUDGE, M.S.

CONCUR:

_____
WILLIAM C. KOCH, JR., JUDGE

_____

WILLIAM B. CAIN, JUDGE